IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,829

In the Matter of RICHARD HAITBRINK,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed June 3, 2016. Published censure.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Richard Haitbrink*, respondent, argued the cause pro se.

*Per Curiam*:  This is an attorney discipline proceeding against Richard Haitbrink, of Shawnee Mission, Kansas. Respondent was admitted to the practice of law in the State of Kansas on June 30, 1966. In March 1968, the Missouri Supreme Court admitted respondent to the practice of law in the State of Missouri.

On June 21, 2015, the Disciplinary Administrator's office filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). Respondent timely filed an answer on September 9, 2015, after the granting of a joint motion to continue the date the answer was due.

A panel of the Kansas Board for Discipline of Attorneys held a hearing on October 22, 2015, at which the respondent appeared personally and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.4(a) (2015 Kan. Ct. R.

1

Annot. 482) (communication); 1.8(h)(1) (2015 Kan. Ct. R. Annot. 530) (making an agreement limiting the lawyer's liability to a client for malpractice); 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property); 1.16(d) (2015 Kan. Ct. R. Annot. 572) (termination of representation); 2.1 (2015 Kan. Ct. R. Annot. 588) (exercise of independent professional judgment); 8.3(a) (2015 Kan. Ct. R. Annot. 670) (reporting professional misconduct); and Supreme Court Rule 207(c) (2015 Kan. Ct. R. Annot. 328) (failure to report action).

Upon conclusion of the hearing, the panel made the following findings of fact, conclusions of law, and disciplinary recommendation. Respondent took no exceptions to the hearing panel's report. We quote the report's pertinent parts below.

"*Findings of Fact*

. . . .

"N.M.

"9.     The respondent associated himself with Daniel E. Ryder, LLC to modify or renegotiate residential home loans. N.M. hired Daniel E. Ryder, LLC to renegotiate her residential home loan. N.M. paid Daniel E. Ryder, LLC $2,500. Daniel E. Ryder, LLC assigned N.M.'s file to the respondent. The respondent failed to provide the services. N.M. requested a partial refund. She did not receive a refund.

"10.     N.M. filed a complaint with the disciplinary administrator's office. The respondent agreed to participate in the attorney diversion program. On February 21, 2012, the respondent entered into an attorney diversion agreement, stipulating that he violated KRPC 1.4, KRPC 1.8(h)(1), KRPC 1.15(a), KRPC 1.15(c), KRPC 1.16, and KRPC 2.1.

"11.     On February 25, 2013, Ms. Knoll dismissed the complaint filed by N.M., following the respondent's completion of the attorney diversion agreement.

"State of Washington

"12.     Beginning in August 2009, and continuing until February 2010, the respondent represented approximately 15 residents of the State of Washington, including N.M., in an effort to negotiate (with mortgage companies) delinquent mortgages, mortgages in foreclosure, or mortgages which exceeded the value of the property.

"13.     N.M. filed a complaint with the Department of Financial Institutions (DFI) of the State of Washington. Thereafter, the respondent received a letter from the DFI alleging that the respondent might be acting as a mortgage broker or loan originator which would require a license.

"14.     The respondent provided a written response to the letter. The respondent informed DFI that he had ceased the activity, but that he had been acting on a good faith belief that he was representing them as an attorney licensed to practice law and not acting as a mortgage broker or loan originator. Additionally, the respondent agreed that he would not resume the practice. Finally, on his own, the respondent provided the DFI with a complete list of clients' names, previously unknown to the DFI.

"15.     The DFI charged the respondent with violating the Mortgage Broker Practices Act in Washington for acting as a mortgage broker and loan originator without being licensed. The respondent made application for an adjudicative hearing. However, because of health and financial issues, the respondent was unable to secure legal representation in the State of Washington.

"16.     Thereafter, the respondent entered into a settlement agreement with the DFI. The respondent agreed to make restitution to the 15 clients and pay for the costs of investigation.

"17.     On April 23, 2013, the respondent paid for the costs of the investigation. The respondent continues to pay restitution to the 15 clients in the State of Washington.

3

"P.V. and M.V.

"18.     In July 2009, P.V. and M.V. hired the respondent to assist them with modifying mortgages on five properties. P.V. and M.V. paid the respondent $11,575 for the representation. Five separate contracts for loan modifications were drawn up. The contracts were identical with the exception of the property address and the fee amounts. The contracts included the following terms:

'This Agreement is entered into by and between Richard F. Haitbrink, Attorney at Law ("the FIRM") and [P.V. and M.V.], (co-borrower) the CLIENT, (whether one or more parties).

'CLIENT hereby retains the FIRM to represent CLIENT in a MORTGAGE CONTRACT MODIFICATION/RENEGOTIATION of: [property type and address] and Client empowers the FIRM to take or cause to be taken all steps necessary to represent CLIENT properly.

'The FIRM may designate non-attorneys and other assistants to prepare papers or perform any other work on the CLIENT's case under the supervision of the FIRM. The FIRM may associate with any other counsel, lawyers or law firms outside the FIRM to handle any portion of CLIENT's case at the FIRM's discretion and at the FIRM's expense. CLIENT grants the FIRM the authority to do this.

. . . .

'CLIENT understands this fee is a prepayment of immediate compensation to the FIRM. This fee is fully earned by the FIRM upon the signing of this Agreement by the FIRM's assuming professional responsibility of CLIENT regarding this specific matter and agreeing to handle CLIENT's case, subject to the Rules of Professional Conduct adopted by the Kansas Supreme Court.

4

. . . .

'The FIRM makes no promises, warranties, representations or guarantees, whether express or implied, as to the result of its efforts, as to the outcome of this matter, and CLIENT acknowledges that no guarantee as to specific results has been given or communicated to CLIENT by the FIRM except for the following: The FIRM understands that a modification offer from a Lender may not be satisfactory to all parties (Borrower/Attorney) and in those cases the FIRM will renegotiate with the Lender on the CLIENT's behalf. If the FIRM cannot facilitate in improvement in the CLIENT's position with their lender a refund will be issued of all monies paid excluding $495.00 which will be retained by the FIRM for any work done to that point, upon CLIENT request within 30 days.

. . . .

'CLIENT understands that all original agreements, promissory notes, mortgages, guarantees and the like between CLIENT and CLIENT's lender(s) are in full force and effect until modification, forbearance or any other alternative payment plan is agreed to by both CLIENT and CLIENT's lender(s), and the agreement representing such modification, forbearance or other alternative payment plan is set forth in writing and executed by both CLIENT and CLIENT's lender(s). CLIENT agrees to hold harmless the FIRM in this regard, and the FIRM will not be liable to CLIENT for loss, injury, damage or claims resulting from the FIRM's performance, services or representation of CLIENT in the loan modification process. CLIENT expressly releases and holds harmless the FIRM, and any attorneys, employees, officers, directors, members, agents and the like, from any claim, suit, action or demand arising out of or in relation to this Agreement.'

It does not appear that the respondent signed the contracts.

5

"19.     P.V. and M.V. were not eligible for loan modifications. P.V. and M.V. requested a refund pursuant to the refund clause of the contracts. The respondent did not refund the $9,100 as promised in the contracts.

"20.     P.V. and M.V. contacted the Kansas Bar Association's Fee Dispute Committee. On March 20, 2012, the Fee Dispute Committee conducted a mediation. The respondent admitted that he owed P.V. and M.V. the fee. Following the mediation, the parties entered into a memorandum of understanding and preliminary settlement. The agreement provided as follows:

'1.     Richard Haitbrink agrees that he owes [P.V. and M.V.] the sum of $9,100 pursuant to the subject contracts between the parties. Said contracts are attached. Both parties agree that a breach of the contracts occurred which gave rise to these damages.

'2.     Richard Haitbrink agrees he shall pay to [P.V. and M.V.] the sum of $1,500 which shall represent prejudgment interest as of March 1, 2012.

'3.     Richard Haitbrink agrees he shall pay to [P.V. and M.V.] post-judgment interest in the amount of 12% per annum.

'4.     Richard Haitbrink agrees he shall pay to [P.V. and M.V.] agree to pay [*sic*] the parties' reasonable attorney's fees in the amount of $1,200, at the rate of $30 per month which shall be due and payable at the same rate as the amounts which are payable pursuant to paragraph 5.

'5.     Richard Haitbrink shall pay towards these sums the sum of $300 per month, commencing on April 10, 2012, and each month thereafter on the 10th day of each month in an equivalent amount

6

for a total period of 12 months. At the end of the 12 months the entire balance owed shall become due and payable.

'6.    Richard Haitbrink or his counsel shall prepare a promissory note which memorializes the instant agreement and shall provide such promissory note to [P.V. and M.V.]'s attorney, Justin Holstin, on or before March 10, 2012.

'7.    All payments shall be made directly to [P.V. and M.V.]'s attorney or as directed by them.

'8.    The terms of this agreement are not considered to be confidential and may be admitted into evidence in any legal proceeding to enforce the terms of this agreement.'

On March 20, 2012, the respondent signed a promissory note, agreeing to pay $330 per month for one year and agreeing to pay the balance due at the end of the year.

"21.    The respondent paid as agreed for a period of time. The respondent then stopped paying as agreed. At the time of the hearing, the respondent had paid P.V. and M.V. and their attorney, approximately $12,000.

"22.    On May 28, 2013, P.V. and M.V. filed a complaint with the disciplinary administrator's office against the respondent. On May 29, 2013, Ms. Knoll wrote to the respondent, directing the respondent to provide a written response to the complaint within 20 days. The respondent failed to file a written response to the complaint within 20 days.

"23.    On July 10, 2013, P.V. and M.V. filed a limited action suit against the respondent in the Shawnee County District Court, case number 2013-LM-011215. The respondent did not answer the petition and default judgment was entered against the respondent in the amount of $10,782, plus interest.

"24.     Finally, on August 23, 2013, the respondent forwarded a written response to the complaint.

"*Conclusions of Law*

"25.     Based upon the findings of fact and the respondent's admissions in his answer, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.4(a), KRPC 1.8(h)(1), KRPC 1.15(a), KRPC 1.16(d), KRPC 2.1, KRPC 8.3(a), and Kan. Sup. Ct. R. 207(c), as detailed below.

"KRPC 1.4(a)

"26.     KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the respondent violated KRPC 1.4(a) when he failed to properly communicate with P.V. and M.V. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.4(a).

"KRPC 1.8(h)(1)

"27.     A lawyer shall not 'make an agreement prospectively limiting the lawyer's liability to a client for malpractice unless the client is independently represented in making the agreement.' KRPC 1.8(h)(1). In this case, the five attorney fee agreements included identical provisions that the client would hold the firm and any attorneys harmless from any claim, suit, action or demand arising out of or in relation to the agreement. The 'hold harmless' provision is in violation of KRPC 1.8(h)(1). Thus, the hearing panel concludes that the respondent violated KRPC 1.8(h)(1).

"28.    Lawyers must properly safeguard the client's possessions. KRPC 1.15(a) requires lawyers to deposit unearned fees into an attorney trust account. Specifically KRPC 1.15(a) provides:

> '(a)    A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained in the state of Kansas. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.'

Despite the language in the agreement to the contrary, the fees paid by P.V. and M.V. were not earned when paid. The fees were not earned until the respondent completed work justifying the payment of fees. Thus, under KRPC 1.15(a), the fees were required to be deposited into the respondent's trust account. The hearing panel concludes that the respondent violated KRPC 1.15(a) by failing to deposit the fees into the respondent's trust account.

"KRPC 1.16(d)

"29.    KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

> 'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been

9

earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

The respondent violated KRPC 1.16(d) when he failed to refund the fees according to the fee agreement. Therefore, the hearing panel concludes that the respondent violated KRPC 1.16(d).

"KRPC 2.1

"30.    Lawyers must exercise independent professional judgment. KRPC 2.1. In this case, the respondent became associated with a non-attorney, Mr. Ryder. The respondent's association with Mr. Ryder interfered with the respondent's exercise of independent professional judgment. Accordingly, the hearing panel concludes that the respondent violated KRPC 2.1.

"KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c)

"31.    Lawyers must report professional misconduct. KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c) provide the requirements in this regard. Specifically, KRPC 8.3(a) provides, '[a] lawyer having knowledge of any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules shall inform the appropriate professional authority.' Kan. Sup. Ct. R. 207(c) provides:

'(c)    It shall be the further duty of each member of the bar of this state to report to the Disciplinary Administrator any action, inaction, or conduct which in his or her opinion constitutes misconduct of an attorney under these rules.'

In this case, the respondent violated KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c) when he failed to inform the disciplinary administrator's office of the actions taken by the DFI. As a result, the hearing panel concludes that the respondent violated KRPC 8.3(a) and Kan. Sup. Ct. R. 207(c).

"32.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"33.     *Duty Violated*. The respondent violated his duty to his client to properly safeguard client property. Additionally, the respondent violated his duty to the legal profession.

"34.     *Mental State*. The respondent negligently violated his duties.

"35.     *Injury*. As a result of the respondent's misconduct, the respondent caused potential injury. The hearing panel concludes that the respondent caused potential injury and not actual injury because the respondent has paid P.V. and M.V. more than $9,100 to date and because the record is unclear whether the clients in Washington were injured or if they received the services for which they were paid, notwithstanding the fact that the respondent was not authorized to provide those services.

"36.     *Aggravating and Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found no aggravating factors present.

"37.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

11

'a.  Absence of a Dishonest or Selfish Motive. The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

'b.  Timely Good Faith Effort to Make Restitution or to Rectify Consequences of the Misconduct. To date, the respondent has paid P.V. and M.V. more than they paid the respondent in attorney fees. Further, the respondent has agreed to continue to pay P.V. and M.V. additional amounts for interest. The respondent has paid DFI for the costs of the investigation. The respondent continues to pay his clients in Washington for the attorney fees they paid him.

'c.  *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. During the relevant time period, the respondent had significant medical problems. It is clear that the respondent's medical conditions contributed to circumstances which led to the difficulties in this case.

'd.  *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts and the rule violations.

'e.  *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*. The respondent is an active and productive member of the bar of Shawnee Mission, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character

12

and reputation as evidenced by several letters received by the hearing panel.

'f.     *Imposition of Other Penalties or Sanctions*. The respondent has experienced other sanctions for his conduct. The respondent agreed to pay to P.V. and M.V. more than what he received. Additionally, the respondent paid the costs of the investigation in the State of Washington. Finally, the respondent agreed to pay restitution to the clients in the State of Washington.'

"38.     *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"39.     In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standards:

'4.13     Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

'4.33     Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

'7.3     Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

13

"40.    The disciplinary administrator recommended that the respondent be suspended from the practice of law. Counsel for the respondent recommended that the respondent be censured and that the censure be published in the Kansas Reports.

"41.    The hearing panel is troubled by the respondent's failure to inform the disciplinary administrator's office of the action taken in Washington in light of the fact that the respondent was on diversion for related circumstances. However, the hearing panel concludes that because the respondent acted negligently and not intentionally he should be allowed to continue to practice law. Continuing to practice law will afford the respondent the opportunity to refund the attorney fees. However, the hearing panel believes that conditions should be attached to the respondent's authorization to continue to practice law, as follows:

'a.    The respondent shall make timely payments to P.V. and M.V.

'b.    The respondent shall make timely payments pursuant to the settlement agreement with the DFI in Washington.

'c.    The respondent shall properly use his attorney trust account.

'd.    The respondent shall not violate the Kansas Rules of Professional Conduct.

'e.    The respondent shall obtain and maintain professional liability insurance.'

"42.    Based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be censured. The hearing panel further recommends that the censure be published in the Kansas Reports. Moreover, the hearing panel recommends that the respondent be ordered to comply with the conditions set forth above. Finally, the hearing panel recommends that

14

should the respondent fail to comply with the conditions set forth above, the disciplinary administrator requests that an order to show cause [be] issued for the respondent [to] show why his license should not be suspended for failing to comply with the conditions.

"43.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the hearing panel's findings, and the parties' arguments to determine whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Respondent filed no exceptions to the final hearing report. As such, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2015 Kan. Ct. R. Annot. 369).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.4(a) (2015 Kan. Ct. R. Annot. 482) (communication); 1.8(h)(1) (2015 Kan. Ct. R. Annot. 532) (making an agreement limiting the lawyer's liability to a client for malpractice); 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping of property); 1.16(d) (2015 Kan. Ct. R. Annot. 572) (termination of representation); 2.1 (2015 Kan. Ct. R. Annot. 588) (exercise of

15

independent professional judgment); 8.3(a) (2015 Kan. Ct. R. Annot. 670) (reporting professional misconduct); and Supreme Court Rule 207(c) (2015 Kan. Ct. R. Annot. 328) (duties of the bar and judiciary). We adopt the panel's findings and conclusions.

The only remaining issue is determining the appropriate discipline for respondent's violations. At the panel hearing, the Disciplinary Administrator's office recommended respondent be suspended from the practice of law. Respondent recommended published censure. The hearing panel recommended published censure with the conditions noted above.

Prior to the hearing before this court, respondent submitted an affidavit stating he had paid in full P.V. and M.V. and remained in compliance with his settlement agreement with the DFI in Washington. The Disciplinary Administrator's office does not dispute those representations. And at oral argument, the Disciplinary Administrator's office changed its position regarding the appropriate discipline and agreed with the panel's recommendation, including the conditions.

The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 212(f) (2015 Kan. Ct. R. Annot. 369); see *In re Kline*, 298 Kan. 96, 212-13, 311 P.3d 321 (2013). After careful consideration, the court holds that respondent should be disciplined by published censure without the conditions set out by the panel. Under the circumstances, and in light of the activities detailed in the affidavit and counsels' representations during oral argument, the interests of the public and the profession are met by the discipline of published censure.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Richard Haitbrink be and is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a) (2015 Kan. Ct. R. Annot. 293) (types of discipline).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

LAWTON R. NUSS, Chief Justice, recused.
MICHAEL J. MALONE, Senior Judge, assigned.[1]

---

[1]**REPORTER'S NOTE:** Senior Judge Malone was appointed to hear case No. 114,829 vice Justice Nuss under the authority vested in the Supreme Court by K.S.A. 20-2616.